IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KEVIN KENNEY, )
)
    Plaintiff, )
)
v. ) 1:17-cv-300 (LMB/TCB)
)
AT&T, )
)
    Defendant. )

MEMORANDUM OPINION

Before the Court is defendant AT&T's ("defendant" or "AT&T") Motion to Dismiss Plaintiff's Complaint ("Motion"), which argues that plaintiff pro se Kevin Kenney's ("plaintiff" or "Kenney") complaint fails to state a claim as to age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Defendants further argue that plaintiff has failed to allege a claim of either national origin discrimination or religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., or any claim of retaliation. Plaintiff has filed an opposition, [Dkt. 15], to which defendant has replied [Dkt. 18], and oral argument was held on June 30, 2017, at which time the Court granted the Motion. This Memorandum Opinion supplements the reasoning stated in open court.

I.    BACKGROUND

Plaintiff's complaint states, in full[1]:

I applied for employment with the above name Defendant on 31 May 2016; and, I have been subjected to different terms and conditions for employment by the above named Defendant. I had applied for several Retail Sales positions during the 31st day of May 2016; thus, I was informed through the Defendant's Hiring

---

[1] All spelling and grammatical errors appear in the original.

Portal that I did not qualify for the job opportunities that I had applied for on this date – this despite meeting all the educational and job experience requirements setforth in the Defendant's job announcement. I believe I have been discriminated and retaliated against due to my age (57), in violation of the Age Discrimination in Employment Act of 1967, as amended. Furthermore, I also believe I have been discriminated and retaliated against due to my national origin (Mexican), and religion (Roman Catholic), in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Dkt. 1] at 6.

In his opposition to the Motion, plaintiff has alleged additional facts.[2] In particular, plaintiff alleges that in or around 1994, he began working for West Telemarking Company ("West Telemarketing") in San Antonio, Texas, where he "found [him]self selling a wide variety of telecommunications packages that had to do with AT&T long distance telephone service plans[.]" [Dkt. 15] at 2. Although West Telemarketing was not directly affiliated with AT&T, it apparently sold AT&T long distance plans as a "private contractor." Id. According to plaintiff, while he was with West Telemarkting he successfully attracted new clients and brought former AT&T customers back into the fold. Id. He eventually began outreach to Spanish-speaking customers as well. Id. Plaintiff also alleges that West Telemarketing encouraged its customers to buy AT&T stock, and that plaintiff personally acquired a "nominal amount" of AT&T stock. Id. at 3. Although plaintiff eventually left West Telemarketing, he alleges that he remained connected to the company because his family in Schertz, Texas, contracted with a division of AT&T in San Antonio to provide telephone and Internet service. Id.

After leaving West Telemarkting, between 2001 and 2016 plaintiff worked for several Mexican entities, including Ipsos BIMSA of Mexico ("Ipsos"), "who specialized in developing

---

[2] Although these facts do not appear in the complaint, the Court will consider them in deference to plaintiff's pro se status in evaluating whether the dismissal should be with or without prejudice.

2

marketing strategies for the sole purpose of successfully selling products and services that were later introeduced into the Latin American Market." Id. at 3. Plaintiff alleges that AT&T NEXTEL of Mexico worked with Ipsos during that period. Id. At an unspecified time, plaintiff attended the <u>Universidad Nacional Autónoma de México</u>. Id.

Plaintiff describes applying for a number of jobs with AT&T through their employment website during the 2001–2016 time period; however, only the May 2016 applications are relevant to this motion. To access that website, plaintiff had to create an account, which entailed providing AT&T with his:

> home address, telephone numbers, electronic addresses; work experience; education history; list of professional publications and writing samples; knowledge of foreign languages and level of proficiency, if any; a list of professional and personal references; a list of former residences where one had resided during a ten year span; documents such [as] a: personal résumé, curriculum vitae; unofficial transcripts; social-security number; self-identifying survey questions listing gender, racial background, veteran status, if disabled or not, was an accommodation being sought in order to carry out the required duties and responsibilities that had been listed in the characteristics and qualifications section of the "AT&T Inc.") announcement; legal authorizations allowing them to conduct credit and background checks.

Id. at 4.

Plaintiff alleges that on May 31, 2016, he applied for a position posted as "Application Sales Executive 3" by filling out an online application. Id. at 4–5. He received an "immediate" response stating that he "did not meet the minimum qualifications to be considered for" the job. Id. at 5. Plaintiff followed up seeking clarification, but never received any additional information. Id.[3] According to plaintiff, he not only met the "stated characteristics and

---

[3] From plaintiff's description, it is unclear what form this follow up took or whether he ever spoke with a real person at AT&T. His allegation is: "In my attempt to obtain a clarification from them ("AT&T" Inc.) or see what had transpired at this website; this was done to no avail. The only feedback that I received was no different than what I had already had [sic] obtained from their human resources department." [Dkt. 15] at 5. At oral argument, defendant explained

3

qualifications mentioned in the announcement," but actually "exceeded many of the parameters and aspects that had been so carefully redacted [sic] at their website." Id. Neither the complaint nor plaintiff's brief in opposition to the Motion clarify what the stated qualifications on the AT&T website were of how he met or exceeded them.

Sometime thereafter (the exact date is not specified), plaintiff applied for a "similar Sales opportunity." Id. "Within minutes," he received a response stating that he "did not meet the minimum qualifications necessary to move forward in the process." Id.[4]

Although this barebone complaint did not include how defendant would have been aware of plaintiff's age, national origin, and religion, in his opposition to the Motion to Dismiss he alleges that defendant would have known this information from a variety of sources. As to his age, plaintiff alleges that he had to report the year he received his undergraduate degree (1982) on his resume, which would give rise to an approximate inference of his age (57 years old). Id. at 6. Plaintiff also argues that having his social security number gave defendant access to a variety of public records that would reveal his age. Id.

As for his national origin, plaintiff argues that "this was disclosed in the application; through the job interview[5] and [an undated] application that lists publications, periodicals,

---

that no human being had handled plaintiff's 2016 applications which at the preliminary stages are fully automated.

[4] At oral argument, the defendant proffered that these applications occurred in July 2016, rather than May, and that they occurred on the same day. According to defendant's proffer, which plaintiff did not contest, the entire process occurred online, meaning plaintiff did not interact with any human member of AT&T's personnel department and no human representative of AT&T ever reviewed plaintiff's applications. Defendant further clarified that its automated process includes an online ethics questionnaire, which asks the applicant to respond to various questions. If an applicant's answers are rejected, the applicant cannot retake the test for six months. This process is fully automated and mandated by defendant's union contract.

[5] Plaintiff does not allege that any job interview took place in 2016.

yearbooks, articles, press releases, dissertation to obtain a degree, place of birth, the use of a Spanish surname that appears on the face of the diplomas." Id. Plaintiff also argues that defendant would know of his national origin because it "provided the Kenney household with a variety of products and services, allowing technicians and other employees . . . access to the interior of [their] Schertz, Texas homestead." Id.[6]

Regarding his religion, the complaint cited no direct facts suggesting that the defenadant would have been aware of his religion; instead, he alleges that "[r]eligious preferences were compiled by different marketing tools that made use of church and crisscross directories in order to define demographics that were used in a variety or marketing campaigns conducted by AT&T . . . and, in trying to fill posts where employees would not object to work on weekend and holidays[.]" Id. at 7.

## II. DISCUSSION

### A. Standard of Review

According to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must set forth sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). The Court must "assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), but only to the

---

[6] For example, plaintiff recites an anecdote from 2013 in which an AT&T technician and his supervisor visited the Kenney home to install telephone and Internet service. [Dkt. 15] at 6–7. The complaint does not allege that this technician communicated with anyone associated with plaintiff's 2016 applications.

5

extent that those allegations pertain to facts rather than to legal conclusions, Iqbal, 555 U.S. at 678. When the complaint is filed by a pro se plaintiff, pleadings are "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The question is whether the plaintiff's allegations, "however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence." Haines v. Kerner, 404 U.S. 519, 520 (1972).

### B. Discrimination

To successfully plead a claim for discrimination in hiring under either Title VII or the ADEA, plaintiff must allege facts sufficient to show that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 544–45 (4th Cir. 2003) (Title VII); accord Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (ADEA).[7] For slightly different reasons, all three of plaintiff's discrimination claims fail because he has not pleaded facts sufficient to give rise to the necessary inference of discrimination.

Plaintiff's claim of religious discrimination under Title VII fails because plaintiff has not sufficiently alleged that AT&T was aware of his religious background. Unlike his age and his national origin, he has not alleged that a part of the job application he filled out in 2016, or the questionnaire he completed to access defendant's website, included any question about his religion. See [Dkt. 15] at 7. Instead, plaintiff merely supposes that his religious preferences

---

[7] Defendants argued that for the fourth element to be satisfied, plaintiff must plead that the job was offered to someone outside his protected classes. Although the Fourth Circuit has held that "as a general rule," such a pleading is required, it has recognized that this result is not dictated by Supreme Court precedent and that exceptions will be made. See Miles v. Dell, Inc., 429 F.3d 480, 486 (4th Cir. 2005). Plaintiff has not made any allegation regarding who ultimately obtained the position; however, for the reasons discussed below, plaintiff's complaint fails to state a claim even if he was not required to plead that the position was ultimately filled by someone outside his protected classes.

were "compiled by different marketing tools" which AT&T could have been able to access. Id. Plaintiff's complaint and opposition are devoid of any allegations that he completed any marketing surveys in which he disclosed his religion, much less that any such survey found its way into AT&T's hands. See id. Accordingly, plaintiff's belief that any such marketing surveys revealed his religion to defendant or that anyone rendering a decision on his 2016 employment applications knew his religion does not rise above the level of speculation, and therefore cannot survive a 12(b)(6) motion under Twombly and Iqbal. Iqbal, 556 U.S. at 678.

Although plaintiff has alleged that AT&T was aware of his age and national origin through information he claims he disclosed in his prior applications, [Dkt. 15] at 6, he has not pleaded any facts that would support an inference of discrimination in the defendant's handling of the 2016 applications. He claims that AT&T erroneously told him that he did not satisfy the "minimum qualifications" for the job, which he argues is indicative of pretext, but he has not pleaded any facts regarding what these qualifications were or how he met them.[8] Without those facts, all that is left is plaintiff's conclusory allegation that AT&T misstated his qualifications, which is not a sufficient factual basis to satisfy the plausibility pleading standard set out by Twombly and Iqbal. Accordingly, plaintiff's discrimination claims will be dismissed.[9]

---

[8] Because these documents are explicitly identified in the complaint and integral to his claims, as they provide the only inference of discrimination, the Court attempted to review them pursuant to its authority under Zak, 780 F.3d at 606–07; however, the material submitted by the parties was not responsive to the Court's request and did not clarify things.

[9] In light of defendant's uncontested proffer at oral argument that plaintiff did not interact with any human beings during his application process, which was fully automated, and that the computerized application process did not ask about his age or national origin, the Court finds that any amendment to the complaint would be futile and that dismissal with prejudice is therefore appropriate.

### C. Retaliation

The complaint also alleges that plaintiff was "retaliated against due to" his age, national origin, and religion. To state a claim for retaliation, a plaintiff must allege that he (1) engaged in a protected activity known to the decisionmaker; (2) suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015).

Plaintiff has not alleged any protected activity. For example, he has not alleged that he complained of discrimination, on any basis, to anyone at AT&T before he applied for, and was rejected for, the 2016 positions. Although plaintiff subjectively believes that he has been the victim of discrimination, plaintiff has not alleged that he expressed that belief to anyone at AT&T before he submitted any of the relevant employment applications. Because a retaliation claim cannot succeed without an allegation of protected activity which was known to the defendant before the decision was made to reject his applications, plaintiff's retaliation claim must also be dismissed.

### III. CONCLUSION

For the reasons stated above, the complaint will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 30 day of June, 2017.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge